# Illinois Official Reports

## Appellate Court

---

### *People v. Brown*, 2019 IL App (5th) 160329

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE J. BROWN III, Defendant-Appellant. |
| District & No. | Fifth District<br>No. 5-16-0329 |
| Filed | October 25, 2019 |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 15-CF-155; the Hon. Robert B. Haida, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Ellen J. Curry, and Daniel R. Janowski, of State Appellate Defender's Office, of Mt. Vernon, for appellant.<br><br>James A. Gomric, State's Attorney, of Belleville (Patrick Delfino, Patrick D. Daly, and Sharon Shanahan, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE MOORE delivered the judgment of the court, with opinion.<br>Justices Welch and Cates concurred in the judgment and opinion. |

**OPINION**

¶ 1    The defendant, Willie J. Brown III, appeals his conviction and sentence for first degree murder, alleging one reversible error during the *voir dire* portion of his trial and a second at his subsequent sentencing hearing. For the following reasons, we affirm.

¶ 2                                   I. BACKGROUND

¶ 3    The facts necessary to our disposition of this direct appeal follow. On March 6, 2015, the defendant was charged, by criminal indictment in the circuit court of St. Clair County, with one count of first degree murder. The indictment alleged that on or about February 4, 2015, the defendant, "without lawful justification and with the intent to kill or do great bodily harm to" the victim, Tyree Smith, shot Smith "in the head and chest with a firearm, thereby causing" Smith's death. On March 4, 2016, as the case proceeded toward trial, the State filed a notice of intent to seek enhanced sentencing, noting that under Illinois law,

> "when a defendant commits the offense of first degree murder while armed with a firearm, and the person personally discharged the firearm which proximately caused *** death to another person, 25 years or up to natural life imprisonment shall be added to the term of imprisonment imposed by the [c]ourt."

On May 6, 2016, the defendant filed a notice of affirmative defenses in which he announced "his intention to present a self-defense claim at trial."

¶ 4    On May 23, 2016, the defendant's jury trial began. During *voir dire*, the trial judge questioned the potential jurors as a group, proceeding row by row. With regard to the four principles of law set forth in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), commonly known as the "*Zehr* principles,"[1] he began by stating the following to the entire group of potential jurors:

> "There are four basic principles that guide all of us in a criminal trial here in Illinois. And I want to go through all of those to make sure that there are [*sic*] some level of understanding about these and an agreement that each of you as potential jurors can understand and follow these principles."

The trial judge subsequently stated each of the four principles, asking for feedback about each principle from the jurors in each row. Specifically, the trial judge inquired of the potential jurors in each row as to whether the potential jurors understood each of the *Zehr* principles and noted for the record that no potential jurors indicated that they did not understand the principles. He did not ask the potential jurors if they "accepted" the principles, instead asking, using the following various phrases with the various rows, whether the potential jurors "can": (1) "follow and apply," (2) "follow or apply," (3) "apply and follow," (4) "follow," or (5) "apply" the principles in the case at hand. Again going row by row, he asked the potential jurors to raise their hands "[i]f not," if they "can't," or if they "have a question about that." As he proceeded row by row, he noted for the record that no potential jurors raised their hands.

---

[1]The *Zehr* principles are that a defendant (1) is presumed innocent of the charge(s) against him or her, (2) is not required to offer any evidence on his or her own behalf, (3) must be proved guilty beyond a reasonable doubt, and (4) may not have his or her failure to testify held against him or her. *People v. Zehr*, 103 Ill. 2d 472, 477 (1984).

¶ 5        Thereafter, a jury was seated, and the presentation of evidence began. Because the issues raised by the defendant on appeal do not pertain to the evidence presented at trial or to the conduct of the parties at trial—and because an understanding of that evidence and conduct is not necessary, for the reasons discussed below, to our disposition of the issues raised by the defendant—we need not discuss the trial in detail. It is sufficient to note that the State presented evidence in support of its theory that the defendant was guilty of first degree murder, and counsel for the defendant presented evidence, including the testimony of the defendant, in support of the defendant's theory of self-defense. Thereafter, the jury retired to deliberate. Following its deliberations, the jury found the defendant guilty of first degree murder and also found that the State had proven "that during the commission of the offense of first degree murder[,] the defendant *** personally discharged a firearm that proximately caused death to another person." On June 24, 2016, the defendant filed a posttrial motion in which he contended (1) he was not proven guilty of first degree murder beyond a reasonable doubt, (2) the trial judge "erred in pretrial rulings," and (3) he was denied a fair trial by "prejudicial and inflammatory statements" made by the State in closing argument.

¶ 6        On June 30, 2016, a sentencing hearing was held, during which arguments were also presented on the defendant's posttrial motion. After first hearing arguments on the motion, the trial judge denied it and then proceeded to the sentencing hearing. The trial judge began by noting that he had "received and reviewed the presentence investigation" (PSI) and then asked the parties if they wished to make any corrections to it. The parties did not wish to correct it. The trial judge then asked if there was "any evidence in aggravation." The State asked to present one witness in aggravation, Shirley Smith.

¶ 7        Smith testified that she was the mother of the victim, Tyree Smith, and that he had four children at the time of his death. Smith read aloud her victim impact statement. Therein, she described her relationship with her son and how he had promised to take care of her as she aged and how he had helped her take care of flowers and in other ways. She described the impact of the murder on her son's four children as follows:

           "One son and three daughters left in this world with no daddy. No one to go to the schools as he would always do. No family vacations. No family times. On holidays I spent time trying to help the children cope with why they have to go through life without a daddy."

She then described in more detail the negative impact the murder had on her son's children and on her. She concluded her statement by noting it was "only a portion of what" she and the children had been forced to endure "on a day-to-day" basis and thanked the court "for allowing me the opportunity to express some of our pain with you."

¶ 8        Following her testimony, the State announced it had "no further evidence in aggravation." The defendant declined to present evidence. The parties then presented argument, with the State requesting a sentence of 60 years in the Illinois Department of Corrections—35 years for first degree murder, followed by 25 years for the "firearm enhancement"—and the defendant requesting the minimum sentence of 45 years (20 years for first degree murder, followed by 25 years for the firearm enhancement). The State listed the factors that it believed applied in aggravation, arguing, *inter alia*, "that this defendant's conduct threatened serious harm separate and apart from the murder of Tyree." The State noted that the defendant killed the victim by firing six shots from a .44-caliber gun at approximately 11:30 a.m. in a housing area where "[a] child could have ran by and gotten caught in that fire. As a matter of fact anyone,

man, woman or child, could potentially have been harmed by this defendant's actions." The State also argued that it would be proper for the trial judge "to consider the impact that this crime has had on Tyree Smith's family, his mother, Shirley, and his four children." The defendant, on the other hand, argued for five factors in mitigation, including the fact that he had no previous felonies, had not broken any rules while in pretrial confinement at the county jail for over one year, and had a respectable employment history prior to the time of the killing.

¶ 9 Following argument, the trial judge stated again that he had reviewed the PSI and opined that it contained "a significant piece of mitigation." He stated that the factors in mitigation that he found to be present were (1) the defendant's lack of criminal history (about which he commented that he found it "highly unusual" and "a remarkable circumstance," in his experience, "for someone of the defendant's age to be involved in a serious criminal offense such as this case and not have a criminal record"), (2) the fact that evidence was presented that the defendant believed he had been provoked into acting in self-defense, even though "the jury found that it did not rise to a legal defense," and (3) "the presence of a mental health diagnosis [for the defendant] that could have affected his decision[-]making on the day of the occurrence." The trial judge continued:

"The statutory factors in aggravation, I find that the defendant threatened harm and caused harm by his actions.

And then the other factor *** is the fact that during jury selection there were actually a remarkable number of people who had heard of this case."

¶ 10 The trial judge noted this was "unusual," in his experience, for a case with no "media or press exposure." He stated that "for that reason I think that there may be a deterrent effect to a sentence that I impose in this particular case." He then discussed "[n]onstatutory factors" mentioned by the State and found as an aggravating factor the fact that the killing occurred in a public housing complex, which should "be a place where people can be safe in their homes." He continued to discuss this factor at some length, at one point addressing the defendant directly about the defendant's decision to take "the law into [his] own hands" and stating that the court could not condone such a course of action. He also discussed the illegal possession and use of firearms. He then discussed the defendant's actions after the shooting, stating that the defendant "ultimately did do the right thing" by turning himself in to police and adding that the defendant "deserve[d] some credit for that to try to own up for what [the defendant] did." He subsequently stated that "[c]onsidering all the factors in aggravation and mitigation," he found "that something more than the minimum sentence is required." He sentenced the defendant to 40 years for first degree murder, followed by 25 years for the firearm enhancement, for a total sentence of 65 years in the Illinois Department of Corrections, to be followed by 3 years of mandatory supervised release. He waived all fines, fees, and costs and admonished the defendant of his appeal rights. This timely appeal followed.

¶ 11 II. ANALYSIS

¶ 12 On appeal, the defendant contends (1) the trial judge committed reversible error because he did not comply with the *voir dire* requirements of Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and (2) the trial judge committed reversible error at sentencing because he "relied upon [the victim's] death as a factor in aggravation, when that is an element of the offense of first degree murder." In support of his second contention, the defendant points to the trial judge's statement, during the sentencing hearing, that the defendant "threatened harm and

- 4 -

caused harm by his actions." The defendant concedes that he did not raise either of these issues at all in the trial court but argues that both errors are subject to plain-error review by this court.

¶ 13    We begin by addressing the defendant's first contention. The crux of his complaint is his assertion that the trial judge did not ask the potential jurors if they "accepted" the *Zehr* principles, but instead asked only whether they "can" follow and/or apply the principles, which the defendant claims "violates Rule 431(b)." When a defendant requests plain-error review of an alleged error, the reviewing court's first step "is determining whether any error occurred." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). We review *de novo* the question of compliance with supreme court rules. See, *e.g.*, *People v. Morris*, 2013 IL App (1st) 110413, ¶ 76. In this case, for the following reasons, we conclude there was no error. As explained above, the *Zehr* principles are that a defendant in a criminal case (1) is presumed innocent of the charge(s) against him or her, (2) is not required to offer any evidence on his or her own behalf, (3) must be proved guilty beyond a reasonable doubt, and (4) may not have his or her failure to testify held against him or her. *People v. Zehr*, 103 Ill. 2d 472, 477 (1984). Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) provides that the trial judge "shall ask each potential juror, individually or in a group, whether that juror understands and accepts" the four *Zehr* principles. The Illinois Supreme Court has stated that "the language of Rule 431(b) is clear and unambiguous; the rule states that the trial court 'shall ask' whether jurors understand and accept the four principles set forth in the rule. The failure to do so constitutes error." *People v. Belknap*, 2014 IL 117094, ¶ 45. Nevertheless, courts of review in Illinois have also recognized that the rule contains some latitude with regard to how a trial judge conducts the question-and-response process with the potential jurors, holding that "there is no requirement that a trial court use the exact language of the rule," as well as that "the rule does not 'prescribe a precise formula for trial judges to use in ascertaining jurors' prejudices or attitudes.' " *Morris*, 2013 IL App (1st) 110413, ¶ 83 (quoting *People v. Emerson*, 122 Ill. 2d 411, 426-27 (1987)).

¶ 14    As described above, during *voir dire* in this case, the trial judge began by stating the following to the entire group of potential jurors:

> "There are four basic principles that guide all of us in a criminal trial here in Illinois. And I want to go through all of those to make sure that there are [*sic*] some level of understanding about these and an agreement that each of you as potential jurors can understand and follow these principles."

The trial judge subsequently stated each of the four principles and questioned the jurors row by row. The defendant acknowledges that the trial judge adequately inquired as to whether the potential jurors understood the *Zehr* principles, but notes that the trial judge did not ask the potential jurors if they "accepted" the principles, instead asking, using the following various phrases with the various rows, whether the potential jurors "can" (1) "follow and apply," (2) "follow or apply," (3) "apply and follow," (4) "follow," or (5) "apply" the principles in the case at hand. The defendant claims this process violated Rule 431(b) because he contends the plain meaning of "accept" is understood to be "to agree to undertake a responsibility," whereas the plain meaning of "can" is more conditional and connotes only that one knows how to do something, not that one actually *will* do it. He also contends that asking if one "can" follow the principles "is softer, and more permissive," whereas asking if one "accepts" the principles "leads to only one understanding and a duty, like 'shall.' " We begin by noting that we reject the defendant's premise that the verb "accept" is a word that "leads to only one meaning and a duty." In putting forward this argument, the defendant focuses on only one definition of the

- 5 -

verb "accept" from only one dictionary; indeed, the same dictionary includes a total of at least six definitions for "accept," some of which could be termed "softer, more permissive" definitions, such as "to endure without protest or reaction," or "to receive (a legislative report) officially." Merriam-Webster's Collegiate Dictionary 7 (11th ed. 2006). Thus, we are not convinced that the verb "accept" is necessarily more susceptible to a singular, concrete meaning than is the word "can."

¶ 15    Parsed definitions of "accept" notwithstanding, we also find support for the trial judge's process in a case very similar to this one—*Morris*, 2013 IL App (1st) 110413, ¶ 81—in which this court examined a defendant's claim that although there was no error with regard to the inquiry into whether the potential jurors understood the *Zehr* principles, there was error with regard to the inquiry into whether the potential jurors accepted those principles. The *Morris* court ruled that the trial judge's process—by which he first told the potential jurors it was essential that they each "understand" and "embrace" the principles, then reviewed each principle in depth and confirmed that no potential juror disagreed with any of the principles—was not erroneous because the process substantially complied with Rule 431(b) as it was "sufficient to confirm the venire's understanding and acceptance of all the principles set forth in the rule." *Id.* ¶ 83.

¶ 16    We find *Morris* to be persuasive and conclude that the same is true in this case because we believe that if—as we conclude the *Morris* court correctly reasoned—ensuring that the potential jurors do not disagree with the *Zehr* principles is tantamount to ensuring they accept the principles, so too is asking if they "can" follow and/or apply the principles tantamount to ensuring they accept them and therefore is compliant with Rule 431(b). We reach this conclusion after considering the totality of the trial judge's presentation to the potential jurors of the *Zehr* principles, which is described in detail above. We reiterate that after questioning the potential jurors as to whether they "can" follow and/or apply the principles, the trial judge asked them to raise their hands "[i]f not," if they "can't," or if they "have a question about that." As he proceeded row by row, he noted for the record that no potential jurors raised their hands. In light of the totality of this question-and-response process between the trial judge and the potential jurors, we reject the premises underlying the defendant's argument and conclude, to the contrary, that no rational potential juror who participated in that process would believe that by agreeing that he or she "can" follow and/or apply the principles, he or she, through some trick of language, retained some sort of subjective right not to follow and/or apply them in practice when deliberating as a juror in the case at hand. Indeed, when the defendant's premise is applied to the plain language of Rule 431(b)—that a potential juror be asked if he or she "accepts" the *Zehr* principles—under a logical extension of the defendant's reasoning, a juror who accepted the principles would nevertheless not be bound to follow and apply them because just as one can, theoretically, agree that one "can" follow and apply a principle while subjectively reserving the right not to follow and apply that principle in practice, so too, under the broad definitions of "accept" that collectively constitute its meaning, can one agree that one "accepts" a principle while subjectively reserving the right not to follow and apply that principle in practice. In other words, to return to the dictionary noted and cited by the defendant with regard to its definitions of "accept," one could agree "to endure without protest or reaction" or "to receive (a legislative report) officially" (Merriam-Webster's Collegiate Dictionary 7 (11th ed. 2006)) the principles without explicitly agreeing to subjectively follow and apply them. Although such a reservation of rights would be in all cases irrational and

completely contrary to what a rational potential juror would perceive to be the overall spirit and purpose of the question-and-response process with the trial judge, it could theoretically happen, as it could with almost any attempt to ensure compliance with this or any other rule. Such is the nature of the English language and all attempts at communication between humans. However, where, as here, the record is devoid of any indication that any of the potential jurors were irrational or were deliberate obstructionists, we decline to impute such motives and behaviors to them because to do so would be to engage in rank speculation, unsupported by any discernible facts in the record. Accordingly, we conclude the trial judge's question-and-response process in this case was in compliance with Rule 431(b). Because there was no error, the defendant's request for plain-error review fails. See, *e.g.*, *Thompson*, 238 Ill. 2d at 613.

¶ 17 We turn now to the defendant's second contention of error, which is that the trial judge committed reversible error at sentencing because he "relied upon [the victim's] death as a factor in aggravation, when that is an element of the offense of first degree murder." In support of this proposition, the defendant points to the trial judge's statement, during the sentencing hearing, that the defendant "threatened harm and caused harm by his actions." The defendant did not raise this issue in the trial court but contends plain-error review is available to him in this case. As explained above, when a defendant requests plain-error review of an alleged error, the reviewing court's first step "is determining whether any error occurred." *Id.* We turn therefore to that task.

¶ 18 It is axiomatic that a trial judge, when issuing a sentence, must not consider as an aggravating factor an element that is inherent in the crime for which the defendant is being sentenced. See, *e.g.*, *People v. O'Toole*, 226 Ill. App. 3d 974, 992 (1992). Nevertheless, the trial judge "need not unrealistically avoid any mention of such inherent factors, treating them as if they did not exist." *Id.* We will not alter a trial judge's sentencing decision on appeal unless the decision represents an abuse of the trial judge's discretion. *People v. Reed*, 376 Ill. App. 3d 121, 127 (2007). We give great deference to the decision because we recognize the fact that the trial judge is in a better position than is this court to fashion an appropriate sentence. *Id.* Accordingly, we presume the decision to be correct. *Id.* at 128. Nevertheless, as noted above, a trial judge may not consider an improper factor in aggravation when sentencing a defendant because such consideration clearly affects that defendant's fundamental right to liberty. *Id.* When we review a sentence for an alleged error based upon the consideration of an improper factor in aggravation, we consider the record as a whole and do not focus merely on a few words or statements from the trial judge. *Id.* We do this because " '[a]n isolated remark made in passing, even though improper, does not necessarily require that [the] defendant be resentenced.' " *Id.* (quoting *People v. Fort*, 229 Ill. App. 3d 336, 340 (1992)). To be entitled to a remand for resentencing, a defendant who has alleged error must show more than the mere mentioning of the improper factor in aggravation: the defendant bears the burden of showing that the trial judge relied upon the improper factor in fashioning the defendant's sentence. *Id.*

¶ 19 In this case, the defendant contends reversible error occurred because the allegedly improper factor was "the sentencing court's first of three factors in aggravation," which he asserts is of particular significance because of the trial judge's "relatively brief announcement of sentence." The defendant notes precedent from this court that holds that if a trial judge states on the record that the judge is considering a certain factor and specifically mentions the factor when meting out the sentence, a reviewing court cannot presume the factor did not play a role in the sentence. See *People v. Whitney*, 297 Ill. App. 3d 965, 971 (1998). On the other hand, a

sentence based on an improper factor may be affirmed where the reviewing court can determine from the record that the weight the trial judge placed on the improperly considered factor in aggravation "was so insignificant it resulted in no increase in the defendant's sentence." *Id.* The State, in this case, contends the factor was merely mentioned in passing and thus this court may affirm.

¶ 20    As *Whitney* and its progeny suggest, the key factor for this court to consider when determining if there was error is the record that exists, or does not exist, from the sentencing hearing. In this case, we do not agree with the defendant that the record supports the conclusion that the trial judge considered an improper factor when sentencing the defendant. As noted above, the defendant claims the trial judge erred at sentencing because he "relied upon [the victim's] death as a factor in aggravation, when that is an element of the offense of first degree murder." In support of this proposition, the defendant points to the trial judge's statement, during the sentencing hearing, that the defendant "threatened harm and caused harm by his actions." Thus, the defendant's argument is based upon the impropriety of the trial judge considering that the defendant "threatened harm and caused harm" *to the victim* by the defendant's actions. However, as explained below, there is no support in the record for the proposition that the trial judge meant anything other than what he actually said.

¶ 21    As described in extensive detail above, at the sentencing hearing, the trial judge asked the State if it wished to present "any evidence in aggravation," to which the State responded by presenting the testimony of the victim's mother, Shirley Smith. Smith testified in detail about the devastating impact the defendant's murder of her son had on her and on her son's four children. When the State subsequently presented argument in support of its sentencing recommendation, the State listed the factors that it believed applied in aggravation, arguing, *inter alia*, "that this defendant's conduct threatened serious harm *separate and apart from the murder of Tyree*." (Emphasis added.) The State noted that the defendant killed the victim by firing six shots from a .44-caliber gun at approximately 11:30 a.m. in a housing area where "[a] child could have ran by and gotten caught in that fire. As a matter of fact anyone, man, woman or child, could potentially have been harmed by this defendant's actions." The State also argued that it would be proper for the trial judge "to consider the impact that this crime has had on Tyree Smith's family, his mother, Shirley, and his four children."

¶ 22    This is the context that exists for understanding the trial judge's subsequent statement, "The statutory factors in aggravation, I find that the defendant threatened harm and caused harm by his actions." Significantly, the trial judge did *not* state "I find that the defendant threatened harm and caused harm *to the victim* by his actions." And yet, on appeal the defendant would have this court amend the trial judge's statement to say just that. In light of the evidence and argument that was actually before the trial judge when he made his statement—that the defendant's actions threatened serious harm to innocent bystanders and caused serious harm to the victim's mother and his four children—we decline the defendant's invitation to twist the trial judge's words. Had the trial judge meant that he was considering as a factor in aggravation the fact that the defendant threatened harm and caused harm *to the victim*, he certainly would have said so explicitly, particularly in light of the fact that no party had asked him to make such a consideration, and the State specifically had asked him to consider how the defendant's conduct threatened serious harm and caused serious harm to *others*, not to the victim. Our conclusion is further supported by the plain language of section 5-5-3.2(a)(1) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(a)(1) (West 2016)), which lists, as a factor that may

be considered in aggravation, the fact that "the defendant's conduct caused or threatened serious harm." Section 5-5-3.2(a)(1) does not state that the serious harm to be considered is restricted to the serious harm to the victim, and we decline to judicially recraft the plain language of the section.[2] In this case, as explained above, the evidence presented at the sentencing hearing supports the conclusion that the defendant's conduct threatened serious harm and caused serious harm to people other than the victim. Accordingly, we find no error on the part of the trial judge.

¶ 23 Moreover, even if we were to amend the trial judge's statement so that we could assume, *arguendo*, that the trial judge believed an appropriate aggravating factor to consider was the fact that the defendant "threatened harm and caused harm *to the victim* by his actions," we agree with the State that when viewed within the overall announcement of sentence—and the record, quoted extensively above, belies the defendant's claim that there was a "relatively brief announcement of sentence"—the comment, even if improper, was merely a passing one. Because the defendant has not met his burden of showing that the trial judge relied upon an improper factor in aggravation when sentencing the defendant, his request for relief in this case fails. See *Reed*, 376 Ill. App. 3d at 128.

¶ 24                                    III. CONCLUSION
¶ 25 For the foregoing reasons, we affirm the defendant's conviction and sentence.

¶ 26 Affirmed.

---

[2]The defendant at no point in the trial court or in this appeal has contended that any Illinois statute or case required the trial judge to consider only serious harm caused or threatened *to the victim*; accordingly, the defendant has forfeited consideration of such a claim. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (argument must contain the contentions of the appellant, the reasons therefor, and the citation of authorities; points not argued in an opening brief are forfeited and shall not be raised in the reply brief, in oral argument, or in a petition for a rehearing). Forfeiture notwithstanding, based upon our independent research we conclude such a claim would be meritless under the facts of this case.