NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170601-U

NO. 4-17-0601

FILED
May 27, 2020
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| DEANDRE T. TOWNES, | ) | No. 16CF213 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Esteban F. Sanchez, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err by refusing to give defendant's proposed jury instruction on informant testimony and by commenting during sentencing about defendant's receipt of compensation and the threat of harm to society.

¶ 2    In March 2016, the State charged defendant, Deandre T. Townes, by information with one count of delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2016)). After defendant's March 2017 trial, a jury found defendant guilty of the charge. Defendant filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. At a joint April 2017 hearing, the Sangamon County circuit court denied defendant's posttrial motion and sentenced him to 14 years' imprisonment. In May 2017, defendant filed a motion to reconsider his sentence, which the court denied after an August 2017 hearing.

¶ 3    Defendant appeals, contending the circuit court erred by (1) failing to give his proposed jury instruction on informant testimony and (2) considering aggravating sentencing

factors that were inherent in the offense in sentencing defendant. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5            The State's March 2016 information alleged defendant knowingly delivered less than 1 gram of a substance containing heroin to a confidential source on January 14, 2016. Delivery of that amount of a controlled substance constitutes a Class 2 felony. 720 ILCS 570/401(d) (West 2016). However, due to his prior convictions, defendant was subject to Class X sentencing. 730 ILCS 5/5-4.5-95(b) (West 2016).

¶ 6            In March 2017, the circuit court held a jury trial on the delivery of a controlled substance charge. The State presented the testimony of (1) Michael Mazrim, a detective with the Springfield Police Department; (2) Joe Womble, a detective with the Springfield Police Department; (3) William Woolsey, a police officer with the Springfield Police Department; (4) April Salto, the confidential source; and (5) Kirsten Stiefvater, a drug chemist with the Illinois State Police crime laboratory. Defendant did not present any evidence. The evidence relevant to the issues on appeal follows.

¶ 7            Detective Mazrim testified he was part of a unit that specialized in investigating narcotics. As part of his job, Detective Mazrim set up controlled buys using confidential sources. On January 14, 2016, he conducted a controlled buy with Salto, a paid confidential source. Around 10 a.m. on that day, Detective Mazrim picked up Salto and conducted a nonintrusive search of her. He searched Salto's pockets to ensure she did not have money, drugs, or anything dangerous in her pockets. Detective Mazrim did not pat down Salto or check her undergarments or shoes for any contraband. Salto did not have any money or drugs in her pockets. Detective Mazrim gave Salto $50 in recorded United States currency and a covert video recorder, which was placed in a stocking cap. Salto exited Detective Mazrim's car and sat out in

front of the residence where she was staying. The police had Salto under constant surveillance during the controlled buy.

¶ 8 After about 20 minutes had passed, Detective Mazrim observed a green Chevrolet Suburban with a black male driver pull into the driveway near where Salto was sitting. Before the Suburban even entered the driveway, Salto had already stood up. Salto entered the passenger side of the vehicle. Since the Suburban's windows had a tint, Detective Mazrim could only tell the number of people in the vehicle. He could not see what was going on in the vehicle. Salto exited the vehicle after being inside of it for about two to three minutes. The Suburban then left the driveway. Detective Mazrim stayed with Salto while another officer followed the Suburban. Salto got into his car and handed him a Baggie of suspected heroin and the stocking hat. The suspected heroin was presented as the State's exhibit No. 2.

¶ 9 Detective Mazrim further testified he searched defendant's residence on March 7, 2016. Defendant and Kenisha Davis were both present in the residence at the time of the search. Detective Mazrim testified the vehicle he observed Salto get into on January 14, 2016, was registered to Davis. Detective Mazrim also testified he recovered a black Chicago Bulls stocking cap (State's exhibit No. 3) from the residence. During Detective Mazrim's testimony, the prosecutor played the video recorded with the covert video recorder. In the video, the driver can be seen wearing a Chicago Bulls stocking cap.

¶ 10 Detective Womble testified he was Detective Mazrim's secondary officer for the controlled buy and remained in Detective Mazrim's vehicle for the duration of the controlled buy. Officer Woosley testified he was the surveillance officer for the January 14, 2016, controlled buy. He was in a separate vehicle. Officer Woosley was also present when defendant was arrested on March 7, 2016.

¶ 11　　　　　Salto testified she was working for the Springfield Police Department to support her heroin habit at the time of the controlled buy. Salto admitted she had two drug-related convictions. On January 14, 2016, she met Detective Mazrim to do the controlled buy. She did not have any money or drugs on her person when she met Detective Mazrim. Detective Mazrim gave her money and a stocking hat. Salto had called defendant, and she waited for him in front of her residence. When defendant pulled into the driveway, she entered the vehicle. Salto testified defendant was the only person in the vehicle and identified defendant in the courtroom as the person who was driving the vehicle. In the vehicle, Salto talked to defendant, and defendant handed her the heroin. Salto handed him the money and exited the vehicle. Salto testified the video recording (State's exhibit No. 1) was an accurate depiction of what took place inside defendant's vehicle. She explained the video briefly showed defendant wearing a Chicago Bulls stocking cap and holding a bag containing several small bags, which she believed contained heroin. After defendant left, Salto sat back down and waited for Detective Mazrim to return. When Detective Mazrim pulled up, she immediately gave him the purported heroin. Salto testified the State's exhibit No. 3 looked like the hat defendant was wearing during the drug transaction.

¶ 12　　　　　Stiefvater testified the State's exhibit No. 2 weighed less than one-tenth of a gram. In her opinion to a reasonable degree of scientific certainty, the State's exhibit No. 2 was heroin.

¶ 13　　　　　During the jury instruction conference, defendant requested two alternative jury instructions addressing the testimony of an informant. The first one stated the following:

> "The testimony of an informer who provides evidence against a defendant for
> pay, or for immunity from punishment, or for personal advantage or vindication,

must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest or prejudice against a defendant."

The State objected to the aforementioned instruction, and the circuit court declined to give it. The court noted highlighting a particular piece of evidence would be prejudicial to both sides. In the alternative, defendant requested Illinois Pattern Jury Instructions, Criminal, No. 3.17 (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.17), which involves accomplice testimony and states the following:

"When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

The court also declined to give the alternative instruction, finding the informant in this case was an agent of the police and thus lacked a sufficient mental state to be an accomplice or coconspirator. It also noted the instruction was prejudicial to defendant because he had challenged his identity and the instruction indicated he did commit the crime.

¶ 14       After hearing the parties' closing arguments and receiving the jury instructions, the jury found defendant guilty of delivery of a controlled substance. Defendant filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, asserting, *inter alia*, the circuit court erred by denying defendant's two jury instructions related to informant testimony.

¶ 15       At a joint April 20, 2017, hearing, the circuit court first denied defendant's posttrial motion and then addressed sentencing. The State presented the testimony of Sergeant

James Wangard of the Springfield Police Department, who testified about several controlled drug buys in which defendant sold heroin. Defendant presented the testimony of Davis, his fiancée, and Lloyd Jackson, his brother. Davis explained defendant was her caregiver due to her being ill and a father to her three children. Jackson explained defendant's difficult childhood. Defendant's father was not in the picture, his mother was a drug addict, and the family was homeless for two years. Jackson was willing to provide defendant housing and employment upon defendant's release from prison. The State asked for a 15-year prison term. The State noted this offense was defendant's third offense related to a controlled substance and defendant had previously served prison terms of five and six years. The State argued the following aggravating factors applied: (1) defendant's conduct threatened serious harm, (2) defendant received compensation, (3) defendant's criminal history, and (4) a longer sentence is necessary to deter others. Defense counsel requested a sentence of six years' imprisonment, noting defendant's difficult childhood, the fact defendant was a caregiver for his fiancée, and defendant delivered only a very small of amount of heroin. Defendant made a statement of allocution.

¶ 16    In sentencing defendant, the circuit court noted defendant had been convicted on four separate occasions of serious felony offenses. The court further noted defendant graduated from cocaine to heroin and commented on heroin's highly addictive and dangerous nature. Moreover, it stated defendant again sold drugs as he had done in two of his other criminal cases and did it for compensation. The court did recognize mitigating evidence existed in this case. It ultimately decided the proper sentence was 14 years' imprisonment. On April 27, 2017, the court entered the written sentencing judgment.

¶ 17    Defendant filed a timely motion to reconsider his sentencing, asserting (1) his sentence was excessive and (2) the circuit court erred by considering defendant's receipt of

compensation and the harm caused to society by drug use as aggravating factors in sentencing defendant. On August 11, 2017, the court held a hearing on defendant's motion to reconsider his sentence. In denying defendant's motion to reconsider, the court stated it did not consider compensation and the dangerousness of drugs as aggravating factors in imposing defendant's sentence. The court explained it discussed compensation in response to defense counsel's statements supporting a lenient sentence and mentioned the dangerousness of drugs in discussing defendant's progression from selling cocaine to selling heroin.

¶ 18    On August 18, 2017, defendant filed a timely notice of appeal that did not fully comply with Illinois Supreme Court Rule 606 (eff. July 1, 2017) because it did not list defendant's sentence and the offense for which he was convicted. In September 2017, the circuit court appointed the Office of the State Appellate Defender (OSAD) to represent defendant on appeal. On October 3, 2017, OSAD filed a timely motion for leave to file an amended notice of appeal, which this court granted on October 12, 2018. See Ill. S. Ct. Rs. 606(d), 303(b)(5), 303(d) (eff. July 1, 2017). Defendant filed his amended notice of appeal on October 12, 2018, which did comply with Rule 606. Accordingly, this court has jurisdiction of defendant's appeal under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 19                                II. ANALYSIS

¶ 20                             A. Jury Instruction

¶ 21    Defendant asserts the circuit court erred by declining to give his proposed non-IPI jury instruction related to informant testimony and contends the court did not exercise any discretion in making that ruling. We note defendant does not challenge the circuit court's refusal to give his alternative instruction, which was IPI Criminal No. 3.17. The State disagrees with defendant's argument, asserting the court properly exercised its discretion in denying the

instruction and notes this court has already addressed the issue in *People v. Trice*, 2017 IL App (4th) 150429, ¶¶ 41-46, 87 N.E.3d 1087. Defendant responds by contending our decision in *Trice* is distinguishable because we addressed the issue of an informant instruction as part of an ineffective assistance of counsel claim. We disagree and continue to follow our analysis in *Trice*.

¶ 22        " 'The sole function of instructions is to convey to the minds of the jury the correct principles of law applicable to the evidence submitted to it in order that, having determined the final state of facts from the evidence, the jury may, by the application of proper legal principles, arrive at a correct conclusion according to the law and the evidence.' " *People v. Nere*, 2018 IL 122566, ¶ 29, 115 N.E.3d 205 (quoting *People v. Ramey*, 151 Ill. 2d 498, 535, 603 N.E.2d 519, 534 (1992)). Generally, we review whether the circuit court erred in refusing to give a jury instruction under an abuse of discretion standard. *Nere*, 2018 IL 122566, ¶ 29. An abuse of discretion occurs only when the circuit court's decision was " 'arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it.' " *People v. Lerma*, 2016 IL 118496, ¶ 23, 47 N.E.3d 985 (quoting *People v. Rivera*, 2013 IL 112467, ¶ 37, 986 N.E.2d 634).

¶ 23        Defendant first notes a circuit court errs when it refuses to exercise discretion on the erroneous belief it lacks discretion as to the question presented. *People v. Queen*, 56 Ill. 2d 560, 565, 310 N.E.2d 166, 169 (1974). He suggests the circuit court did not exercise its discretion because the court found it was precluded from doing so under Illinois law. In addressing defendant's first proposed jury instruction, the circuit court stated the following:

> "Counsel, the defense relies on non-IPI instructions relying on the Fourth Circuit federal—federal circuit case that provides an instruction for informer credibility.

The Fourth District Court of Appeals, however, of our—Illinois, which is the Court of Appeals that—for which we are bound to and—suggests or has indicated in People versus Hill, that such an instruction should not be given. And the reason is a solid reason, I believe, and there's no reason to depart from it. I believe that highlighting one witnesses' testimony over another witness or somehow highlighting a particular piece of evidence will be prejudicial in this case, to both sides, in fact. And therefore, I think that I will follow the Fourth District Court of Appeals of Illinois, and deny the objection—or deny giving the instruction by—to the jury by the court."

The circuit court's aforementioned language shows the court did exercise discretion in refusing to give the jury instruction by considering the facts of the case and relevant case law. Contrary to defendant's suggestion, the court did consider whether the instruction was proper on the facts of the case before it, as evidenced by its statement the proposed instruction would prejudice both sides of the case. Thus, we disagree with defendant's argument the circuit court did not exercise its discretion in refusing to give defendant's proposed non-IPI instruction on informant testimony.

¶ 24    As to the merits of the circuit court's refusal to give the jury instruction, this court addressed the propriety of an informant testimony jury instruction in *Trice*, 2017 IL App (4th) 150429, ¶¶ 42-46. The fact we did so in denying a defendant's claim of ineffective assistance of counsel does not alter our analysis on the propriety of an informant instruction. In concluding the circuit court would not have abused its discretion by refusing to tender an informant testimony instruction, we set forth several reasons for our conclusion. *Trice*, 2017 IL App (4th) 150429, ¶¶ 42-46. First, we noted no IPI instruction cautions the jury about the credibility of a

- 9 -

paid informant's testimony. *Trice*, 2017 IL App (4th) 150429, ¶ 42. Second, we recognized the trend among the federal courts of appeal favoring informant instructions but found a special jury instruction about informants was contrary to Illinois law. *Trice*, 2017 IL App (4th) 150429, ¶ 44. Third, we concluded the giving of Illinois Pattern Jury Instructions, Criminal, No. 1.02 (4th ed. 2000) (hereinafter IPI Criminal 4th) was sufficient to instruct the jury to consider any potential interest or bias when assessing the informant's credibility. *Trice*, 2017 IL App (4th) 150429, ¶ 45. Additionally, we "note[d] IPI Criminal 4th No. 3.00, Introduction, 'disapproves of instructions which comment on particular types of evidence.' " *Trice*, 2017 IL App (4th) 150429, ¶ 46. Last, this court stated the following: "We seriously doubt that any sensible jury, using common sense, needs to be instructed to view paid informants with caution. This is especially true where, as here, defense counsel addressed the informant's potential bias and interests on cross-examination and in closing argument." *Trice*, 2017 IL App (4th) 150429, ¶ 46.

¶ 25        We find no reason to depart from our analysis in *Trice*. Illinois continues to lack an IPI instruction specifically addressing informant testimony, and Illinois Pattern Jury Instructions, Criminal, No. 3.00 (approved Oct. 17, 2014) still disapproves of jury instructions that comment on a particular type of evidence. Moreover, as in *Trice*, the jury in this case received IPI Criminal 4th No. 1.02, which addresses witness bias and prejudice, and defense counsel addressed Salto's potential bias and interests on cross-examination and in closing statements. Additionally, defendant has not cited any Illinois cases disagreeing with our holding in *Trice*. Accordingly, we find the circuit court did not abuse its discretion in declining to give defendant's non-IPI jury instruction on informant testimony.

¶ 26                    B. Aggravating Sentencing Factor

¶ 27        Defendant also contends the circuit court erred by considering how defendant's

actions threatened harm to society and the fact defendant received compensation from the offense. The State contends the circuit court properly considered all factors in aggravation in sentencing defendant.

¶ 28 When a trial judge hands down a sentence, the judge must not consider as an aggravating factor an element that is inherent in the offense for which the defendant is being sentenced. *People v. Brown*, 2019 IL App (5th) 160329, ¶ 18. "Nevertheless, the trial judge 'need not unrealistically avoid any mention of such inherent factors, treating them as if they did not exist.' " *Brown*, 2019 IL App (5th) 160329, ¶ 18 (quoting *People v. O'Toole*, 226 Ill. App. 3d 974, 992, 590 N.E.2d 950, 962 (1992)). When reviewing a sentence for an alleged error based upon the consideration of an improper factor in aggravation, the reviewing court considers the record as a whole and does not focus merely on a few words or statements by the trial judge. *Brown*, 2019 IL App (5th) 160329, ¶ 18. We note "[a]n isolated remark made in passing, even though improper, does not necessarily require that [the] defendant be resentenced." (Internal quotation marks omitted.) *Brown*, 2019 IL App (5th) 160329, ¶ 18 (quoting *People v. Fort*, 229 Ill. App. 3d 336, 340, 592 N.E.2d 1205, 1209 (1992)). To receive a new sentencing hearing, the defendant must show more than the mere mentioning of the improper factor in aggravation; rather, the defendant must demonstrate the trial judge relied upon the improper factor in fashioning the defendant's sentence. *Brown*, 2019 IL App (5th) 160329, ¶ 18. We will not disturb a circuit court's sentencing decision on appeal unless the decision represents an abuse of discretion. *Brown*, 2019 IL App (5th) 160329, ¶ 18.

¶ 29 Both the receipt of compensation and the threat of serious harm are usually inherent in the offense of delivery of a controlled substance. See *People v. McCain*, 248 Ill. App. 3d 844, 851-52, 617 N.E.2d 1294, 1299-1300 (1993). However, "[i]t is not improper *per se*

- 11 -

for a sentencing court to refer to the significant harm inflicted upon society by drug trafficking." *McCain*, 248 Ill. App. 3d at 852, 617 N.E.2d at 1300. In *McCain*, 248 Ill. App. 3d at 852, 617 N.E.2d at 1300, the reviewing court recognized commenting on the harms associated with drug trafficking (1) helps defendants understand why they are subject to the penalties provided by law and why they have received their particular sentences and (2) encourages rehabilitation by providing a context in which the defendants may develop feelings of remorse. *McCain*, 248 Ill. App. 3d at 852, 617 N.E.2d at 1300. Thus, it suggested sentencing courts should try to segregate such general commentary about the effects of drug trafficking on society from the balancing of sentencing factors. *McCain*, 248 Ill. App. 3d at 852, 617 N.E.2d at 1300.

¶ 30 In denying defendant's motion to reconsider his sentence, the circuit court explained its statements about compensation and the threat of harm were in reference to defendant's criminal history and his progression of criminality and in response to defense counsel's arguments about the small amount of heroin. In his briefs, defendant criticizes the circuit court's finding defendant's criminality progressed when he went from selling cocaine to selling heroin. He notes his cocaine convictions were Class 1 felonies while his heroin conviction was a Class 2 felony. However, as the circuit court noted, it is commonly known heroin is a more dangerous drug than cocaine. Thus, we find nothing improper with the circuit court's progression of criminality comment. Moreover, in addressing defendant's motion to reconsider, the circuit court denied it considered compensation and the threat of harm as aggravating factors in imposing defendant's sentence.

¶ 31 Defendant contends the record refutes the circuit court's denial it considered the factors in sentencing him, noting the circuit court's following statements at his sentencing hearing:

- 12 -

"So, [defendant], I'm going to sentence you to prison for a longer period of time than you have been sentenced before. To do otherwise would be to deprecate the seriousness of this offense and the danger that this conduct poses to the community because of the nature of the drug and the type of involvement."

We disagree with defendant's assertion the aforementioned statement can be construed as a reference to the fact defendant received compensation from the offense. Thus, we do not find the circuit court improperly considered compensation as an aggravating factor in this case. As to the threat of harm, another construction of the circuit court's aforementioned statements is it was again commenting on the nature of the offense committed by defendant. Regardless, given the circuit court's statements at the hearing on defendant's motion to reconsider, we find the defendant has failed to demonstrate the circuit court relied upon the improper factor in fashioning defendant's sentence. See *Brown*, 2019 IL App (5th) 160329, ¶ 18.

¶ 32 Accordingly, we find the circuit court did not commit reversible error in sentencing defendant to 14 years' imprisonment.

¶ 33                                III. CONCLUSION

¶ 34 For the reasons stated, we affirm the Sangamon County circuit court's judgment.

¶ 35 Affirmed.