NOTICE

Decision filed 02/07/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 180580-U

NO. 5-18-0580

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-CF-155 |
| | ) | |
| WILLIE J. BROWN, | ) | Honorable |
| | ) | Stephen P. McGlynn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where the circuit court's denial of the defendant's amended postconviction petition was not manifestly erroneous, and any argument to the contrary would be without merit, the defendant's appointed appellate counsel is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2    The defendant, Willie J. Brown, filed a petition for postconviction relief and, through counsel, an amended petition for postconviction relief. Following an evidentiary hearing, the circuit court denied the amended petition. The defendant now appeals from that denial order. The defendant's court-appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit. On that basis, OSAD has filed a motion for leave to withdraw as counsel (see *Pennsylvania v. Finley*, 481 U.S. 551 (1987)), along with a memorandum of law in support thereof. OSAD properly gave notice to the defendant. This court

1

gave him ample opportunity to file a *pro se* brief, memorandum, or other document explaining why OSAD should not be allowed to withdraw as counsel or why this appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's motion and memorandum of law, as well as the entire record on appeal, and has concluded that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 3                                                    BACKGROUND

¶ 4     In 2015, the defendant was charged with first degree murder in connection with the shooting death of Tyree Smith. It was alleged that the defendant intended to kill or to do great bodily harm to Smith. The defendant gave notice of his intent to assert the affirmative defense of self-defense.

¶ 5     On May 3, 2016, the defendant, his public defender, Lloyd Cueto Jr., and an assistant state's attorney were present for a short hearing on pretrial motions. Immediately after hearing those motions, the judge raised the subject of sentencing, in the event that sentencing should become necessary. The judge asked whether the attorneys agreed that the "normal range" of punishment for first degree murder was 20 to 60 years, with 3 years of mandatory supervised release, but that if the jury finds that the defendant personally discharged a firearm, the statute "would call for a 25-year to natural life enhancement," and "the minimum sentence would be 45 years *** and the maximum sentence would be up to natural life." Both the assistant state's attorney and the public defender agreed that the judge had accurately stated the sentencing scheme.

¶ 6     On May 23, 2016, the cause proceeded to trial by jury. Cueto represented the defendant at trial, along with co-counsel Sara Rice. Suffice to say that the State presented evidence that the defendant had shot Tyree Smith with a handgun multiple times, thereby killing Smith, and that he

2

was not justified in doing so, while the defendant presented evidence, in the form of his own testimony, that he had acted in self-defense. On May 25, 2016, the jury returned a verdict of guilty of first degree murder. The jury further found that the defendant, in committing the murder, had personally discharged a firearm.

¶ 7 In June 2016, the court sentenced the defendant to imprisonment for a term of 65 years, which was 40 years plus the 25-year add-on (see 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2016)), and mandatory supervised release for 3 years. The defendant perfected an appeal from the judgment of conviction.

¶ 8 On direct appeal, the defendant argued through appointed counsel, OSAD, that the trial judge had committed reversible error (1) by not complying with the *voir dire* requirements of Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and (2) by relying upon the victim's death as a factor in aggravation, where the victim's death is an element of the offense of first degree murder. This court rejected both of those arguments and affirmed the judgment of conviction. *People v. Brown*, 2019 IL App (5th) 160329.

¶ 9 During the pendency of the direct appeal—on October 26, 2017—the defendant filed a *pro se* petition for postconviction relief. The filing initiated the postconviction proceedings that are the subject of the instant appeal. In his *pro se* petition, the defendant alleged two instances of ineffective assistance of defense counsel prior to the commencement of the jury trial. In a supporting affidavit, the defendant stated that counsel had not informed him of the 25-years-to-life add-on to his term of imprisonment, and he also stated that he had wanted a bench trial but was unaware that he had a right to one, and his counsel had refused to allow him to seek a bench trial.

¶ 10 The circuit court found that the petition stated the gist of a constitutional claim. It appointed postconviction counsel for the defendant.

3

¶ 11    On the defendant's behalf, postconviction counsel filed an amended petition for postconviction relief. The amended petition alleged two instances of ineffective assistance of defense counsel prior to the start of the jury trial. First, it was alleged that defense counsel, shortly before the start of trial, informed the defendant that the State had proposed a plea offer under which the defendant would plead guilty to a reduced charge of second degree murder and the State would agree to cap the prison sentence at 30 years. According to the amended petition, counsel advised the defendant to reject the plea offer because, given the defendant's lack of a criminal record, even if he went to trial on the charge of first degree murder and was found guilty, the longest sentence he would receive would be 30 years. Second, it was alleged that counsel had adamantly refused the defendant's request to waive his right to a jury trial and proceed to a bench trial. According to the amended petition, the defendant wanted to waive his jury-trial right, but he thought that the attorney was the one who chose between a jury trial and a bench trial, and counsel told the defendant that he "was not going to waive his right to a jury trial." For relief, the amended petition sought vacatur of the judgment of conviction. Postconviction counsel subsequently filed a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 12    The State filed a motion to dismiss the amended postconviction petition, but after a hearing, the motion to dismiss was denied. The amended petition proceeded to an evidentiary hearing.

¶ 13    On October 29, 2018, the evidentiary hearing was held. The defendant testified on his own behalf. According to the defendant, it was in the middle of April 2016 that one of his public defenders, Sara Rice, informed him that the State had proposed a plea offer under which he would plead guilty to a reduced charge of second degree murder and the State would agree to cap the sentence at 30 years. The defendant responded that he would accept the offer. However, Rice told the defendant, "I don't think you should take it because you have no criminal history and that we—

4

we are well assured that we could win you this case." The defendant did not accept the offer, and all because Rice "misled" him and told him that he "wouldn't get the maximum sentence" even if he was tried and found guilty. The defendant felt that Rice had forced him into turning down the State's offer. At the time of this discussion with Rice, the defendant was not even aware of the range of sentences that he faced. Sometime later, he learned, on his own, that the sentencing range for first degree murder was 20 to 60 years. Then, at the pretrial hearing of May 3, 2016 (*i.e.*, 20 days before the trial began), the defendant heard the judge say that the sentencing range for first degree murder was 20 to 60 years, plus a 25-year enhancement. It was only then that the defendant became aware of the actual prison time he faced. However, the defendant did not mention again his desire to accept the State's plea offer, for Rice said that she felt they could win the case. The defendant did not recall Rice's approaching him to discuss an offer that included the State's recommending a cap of 40 years.

¶ 14　The defendant further testified that on May 3, 2016, just prior to the pretrial hearing of that date, the defendant told his other public defender, Lloyd Cueto Jr., that he wanted to waive his right to a jury trial and proceed to a bench trial. He wanted a bench trial because he "felt that the jury didn't know the law as much as the judge did." Cueto replied, "no, you can't do that, that is not your choice to make, that is mine." The defendant believed Cueto, for he lacked any knowledge to the contrary. Since that time, the defendant had come to understand that the Constitution gives the defendant personally the right to decide between a jury trial and a bench trial. If the defendant had known this at the time of his talk with Cueto, he would have gone before the court and waived his right to a jury trial.

¶ 15    Other than his own testimony, the defendant did not present any other evidence at the evidentiary hearing.  The State called as witnesses Sara Rice and Lloyd Cueto Jr., the defendant's two public defenders from the original court proceedings.

¶ 16    Rice testified that the State had made a plea offer, but she could not recall the offer's terms.  She identified an exhibit as a letter dated May 11, 2016, and faxed to the public defender's office, which described the terms of a plea offer in this case.  (Surprisingly, this exhibit is not included in the record on appeal.)  Following her usual practice, Rice discussed the terms of the plea offer, along with its advantages and disadvantages, with the defendant.  However, she could not remember exactly what was said.  Rice was sure that she had not told the defendant that his sentence would be no more than 30 years, and she was aware, at the time, that second degree murder was a Class 1 felony punishable by 4 to 20 years in prison.  The defendant always seemed to understand their plea-related conversations, Rice said, and she never coerced him or deceived him into any particular decision relating to a plea.  As to the issue of a bench trial, Rice denied depriving the defendant of his right to one.  It was Rice's "common practice" to inform clients, during their first or second meeting, that they have the power to decide between a jury trial and a bench trial.  Although she did not recall the defendant's ever saying that he wanted a bench trial, if he had expressed a desire for one, she would have discussed the matter with him, for her preference was for a jury trial.  However, Rice continued, if the defendant still wanted a bench trial after that discussion, she would have pursued it, for such a decision is for the defendant to make.  Rice did not recall "having any concerns about [the defendant's] ability to understand our communications about the case, the—the sentencing range for what he was charged with or the trial process itself."  She recalled that he seemed "very excited to have the jury hear the case."

6

¶ 17    Cueto testified that he was "the first chair" in the defendant's murder case. According to Cueto, there were plea negotiations in the defendant's case. In those negotiations, Cueto had sought a reduced charge of second degree murder, in accordance with the defendant's instructions. "[The defendant] was only really interested in considering second degree offers," Cueto said. However, the prosecutor who handled the case refused to reduce the charge. The prosecutor made an offer that included a plea of guilty to first degree murder, and it was the only plea offer that the State made in this case. Cueto discussed that offer with the defendant, and the defendant seemed to understand it, but he did not accept it. Cueto never coerced or misled the defendant into rejecting a plea offer, and he would have acted in accordance with the defendant's wishes in regard to pleading. With the firearm enhancement, the maximum penalty the defendant faced was life imprisonment, as Cueto and the defendant discussed. Never did Cueto say that the maximum sentence the court would impose would be 30 years. It was Cueto's "impression" that the defendant was "very serious" about wanting to go to trial and present his defense of self-defense. From the pretrial (of May 3, 2016) to the time the jury was sworn, the defendant never showed any confusion about why his case was going to trial instead of being resolved by a plea agreement. Even at the commencement of trial, Cueto thought that the defendant wanted to proceed to jury trial.

¶ 18    Cueto also testified that he thought a jury trial was the better option given the specifics of the defendant's case, and he thought he had explained to the defendant why he felt that way. The defendant appeared to understand the issues involved in a bench trial versus a jury trial, and Cueto believed that he had properly informed the defendant of them. Moreover, the defendant did not appear to have any cognitive difficulties. If the defendant had expressed a desire for a bench trial, Cueto would have pursued that option. He would not have impeded the defendant's decision on

7

which type of trial to have, a decision that was ultimately for the defendant to make. To the best of Cueto's recollection, though, the defendant never told him that he wanted a bench trial. Cueto specifically denied telling the defendant that he (the defendant) was not going to waive his right to a trial by jury.

¶ 19 At the end of the evidentiary hearing, the court took the matter under advisement.

¶ 20 On November 8, 2018, the court entered a written order denying the amended postconviction petition. The court specifically found that the two attorneys who testified at the evidentiary hearing were "credible" in regard to pretrial negotiations, plea offers, and the defendant's lack of expression of a desire to waive jury trial. Finally, the court found that the defendant was not misled as to the possible sentences that he faced in the event he was found guilty of the charged offense. A motion for rehearing was filed but denied. Afterward, the defendant filed a notice of appeal, thus perfecting the instant appeal.

¶ 21                                  ANALYSIS

¶ 22 This appeal is from the circuit court's denial of the defendant's amended petition for postconviction relief, which followed a third-stage evidentiary hearing. As previously noted, the defendant's appointed attorney on appeal, OSAD, has filed with this court a *Finley* motion to withdraw as counsel and a supporting memorandum. The defendant has not filed a response to OSAD's motion. OSAD suggests a potential issue for review, namely, whether the circuit court's denial of the amended postconviction petition was manifestly erroneous.

¶ 23 The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) provides that a criminal defendant may challenge his conviction or sentence for substantial violations of federal or state constitutional rights. *Id.* § 122-1(a)(1); *People v. Edwards*, 2012 IL 111711, ¶ 21. A postconviction proceeding begins when the defendant files a verified petition in the circuit court.

725 ILCS 5/122-1(b) (West 2018). The Act provides for three stages of examination by the court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the third stage, an evidentiary hearing is held. 725 ILCS 5/122-6 (West 2018); *Domagala*, 2013 IL 113688, ¶ 34. At that hearing, the defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Coleman*, 206 Ill. 2d 261, 277 (2002). The court "may receive proof by affidavits, depositions, oral testimony, or other evidence" and it "may order the [defendant] brought before the court." 725 ILCS 5/122-6 (West 2018). The court typically acts as fact-finder, determining the credibility of witnesses and the weight to be given particular testimony and evidence, and resolving any conflicts in the evidence. *Domagala*, 2013 IL 113688, ¶ 34. Relief is granted or denied based on that hearing. 725 ILCS 5/122-6 (West 2018). The denial of a postconviction petition after an evidentiary hearing is generally reviewed for manifest error. *People v. Coleman*, 2013 IL 113307, ¶ 98. Manifest error is that which is plain, clearly evident, and indisputable. *Id.*

¶ 24    In his amended postconviction petition, the defendant alleged that trial counsel had provided constitutionally ineffective assistance (1) by coercing or misleading him into rejecting the State's offer that he plead guilty to a reduced charge of second degree murder in exchange for the State's agreeing to cap his prison sentence at 30 years, and (2) by refusing the defendant's request to waive his right to a jury trial and proceed to a bench trial. When presented with an ineffective-assistance claim, this court applies the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984). Under that test, a defendant must show both (1) that his attorney's performance fell below an objective standard of reasonableness, as measured by reference to prevailing professional norms, and (2) that the substandard representation so prejudiced the defendant that there is a reasonable probability that, absent the errors, the outcome would have been different. *Id.* at 687-88. A defendant must satisfy both prongs of *Strickland*; failure to satisfy

9

either prong precludes a finding of ineffective assistance. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010). *Strickland* applies to claims arising out of the plea process. *Missouri v. Frye*, 566 U.S. 134, 140 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

¶ 25    As to the first allegation, the defendant testified at the evidentiary hearing that in April 2016, public defender Rice approached him with a plea offer from the State, under which the State would file a reduced charge of second degree murder, he would plead guilty to that charge, and the State would cap his sentence at 30 years. When the defendant responded that he would accept the offer, Rice told him, "I don't think you should take it because you have no criminal history and that we—we are well assured that we could win you this case." The defendant turned down the State's offer, he said, because Rice had "misled" him and told him that he "wouldn't get the maximum sentence" even if he was tried and found guilty.

¶ 26    For reasons unexplained, the defendant somehow interpreted Rice's words as forcing him, or coercing him, into turning down the State's offer. Regardless of the defendant's odd interpretation of Rice's words, Rice herself said that she never coerced or deceived the defendant into any particular decision relating to a plea. Furthermore, the defendant's whole scenario about a plea to second degree murder was contradicted by the testimony of Cueto, who was the lead attorney for the defendant in this case. According to Cueto, the State made only one plea offer in the case—and it included a plea of guilty to the charged offense, first degree murder. During plea negotiations, Cueto sought a reduced charge of second degree murder, as the defendant had instructed. "[The defendant] was only really interested in considering second degree offers," Cueto explained. However, the State had refused to budge on the first degree murder charge. The defendant seemed to understand the plea offer, Cueto said, but decided to reject it.

¶ 27    In the order denying the amended postconviction petition, the court found that both Rice

and Cueto were "credible" in regard to pretrial negotiations, plea offers, etc.  As the trier of fact,

the court was entitled to make that determination, and nothing in the record suggests that it was

manifestly erroneous.  See *People v. Alden*, 15 Ill. 2d 498, 503 (1959) ("unless something appears

to show that the determination by the trial court was manifestly erroneous, the trial judge, who had

an opportunity to see and hear each witness, should be upheld").

¶ 28    As to the second allegation, concerning the defendant's supposed desire for a bench trial,

the defendant testified at the evidentiary hearing that he told Cueto that he wanted to waive his

right to a jury trial and proceed to a bench trial.  Cueto's response, according to the defendant, was

"no, you can't do that, that is not your choice to make, that is mine," and the defendant naively

believed him.  However, Cueto specifically denied that such an exchange with the defendant had

taken place, and both Cueto and Rice stated that they did not remember the defendant's ever

expressing a desire for a bench trial.  Both Cueto and Rice thought that they had discussed with

the defendant the issue of jury trial versus bench trial, and that the defendant understood the matter.

Both testified that they thought a jury trial was the right choice, but that if the defendant had chosen

a bench trial, they would have honored his choice, since it was his decision to make.  Here, too,

the court found Cueto and Rice credible as to defendant's lack of an expressed desire to waive jury

trial.  Nothing in the record suggests that the circuit court's finding was manifestly erroneous.  A

reviewing court has no right to "substitute its judgment as to the *** credibility of witnesses for

that of the trier of fact."  *People v. Finklea*, 186 Ill. App. 3d 297, 301 (1989).

¶ 29                                          CONCLUSION

¶ 30    The potential issue raised by OSAD—whether the circuit court's denial of the amended

postconviction petition was manifestly erroneous—was the only issue that could have emerged

11

from the evidentiary hearing in this case. The outcome of that hearing turned on the circuit court's credibility determinations. When the court found that the defendant's two public defenders from the original proceedings were credible, that finding essentially doomed the defendant's postconviction claims of ineffective assistance. Any argument that the court's credibility determinations were manifestly erroneous would have no merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 31    Motion granted; judgment affirmed.